In the Matter of the Application of JACOB PROWLER, Petitioner, for a Certiorari Order against ALFRED A. TAYLOR, as Commissioner of Street Cleaning of the City of New York, Respondent.

First Department, February 20, 1925.

Municipal corporations — city of New York — certiorari to review proceedings resulting in dismissal of petitioner, assistant foreman, in street cleaning department — petitioner was found guilty of accepting gratuity — no prior conviction — rule 25 of department adopted under Greater New York charter, § 537, provides for dismissal only on fourth conviction — petitioner was improperly removed.

The petitioner, assistant foreman, second grade, in the department of street cleaning of the city of New York, was improperly removed by the commissioner of street cleaning on a charge that he accepted a gratuity for the performance of his duties, since it appears that rule 25 of the department, which was adopted pursuant to the power contained in section 537 of the Greater New York charter, does not provide for dismissal except on a conviction of a fourth offense, and that the violation for which the petitioner was convicted was the first offense. The fact that the petitioner did not plead guilty but stood trial did not authorize the commissioner to remove him.

MARTIN, J., dissents, with opinion.

CERTIORARI ORDER granted out of the Supreme Court at the New York Special Term on the 16th day of June, 1923, directed to Alfred A. Taylor, as commissioner of the department of street cleaning of the city of New York, commanding him to certify and return to the clerk of the county of New York all and singular his proceedings had relating to the dismissal of the petitioner from his employment and position of assistant foreman, second grade, in the department of street cleaning of the city of New York.

*William Weintraub* [*Charles C. Sanders* with him on the brief], for the petitioner.

*George P. Nicholson, Corporation Counsel* [*Henry J. Shields* of counsel; *John F. O'Brien* with him on the brief], for the respondent.

DOWLING, J.:

The charge preferred against petitioner and on which he was given a hearing was that he had violated rule No. 25 of the department of street cleaning in that he had accepted a gratuity of two dollars for the removal of garbage.

Rule No. 25 of the department was adopted in 1915, pursuant to the power contained in section 537 of the Greater New York charter (Laws of 1901, chap. 466), which provides as follows: " The said commissioner of street cleaning is hereby authorized and empowered, from time to time, to make, adopt, enforce rules, orders and regulations conformable to the provisions of this act, for the government, administration, discipline and disposition of the said department and of the members thereof, and to prescribe and define the duties of each member."

The said rule, as then adopted, and in full force and effect at the time of petitioner's hearing, was embraced in general order No. 11, the " Code of Discipline " of the department, and the " Penalty Schedule for Violation of Rules," thereto annexed, provided among other things:

| " Character of Offense.<br>D denotes dismissal.<br>Numerals denote number of demerits. | Maximum Penalty<br>for Offense | | | | |
|---|---|---|---|---|---|
| | 1st | 2d | 3d | 4th | 5th |
| " 25 Accepting a gratuity for work done......... | 10 | 20 | 40 | D | .. " |

This is the rule 25 referred to in the charges. Petitioner had never before been charged with any violation of rule 25. Upon conviction, therefore, he was found guilty of a first offense, for which the penalty was ten demerits. Had he pleaded guilty to this charge, or made no defense whatever, he could have received no higher punishment than that, and I cannot see why he can be punished with the severest penalty possible, dismissal, because he was found guilty after a hearing. If the commissioner desires more latitude for disciplinary measures, he should change the terms of the general order, which he has accepted and under which he expressly acted. The utmost that he could do under it for a first offense under rule 25 was to impose ten demerits on petitioner. The charge against petitioner was a violation of that rule, he was called upon to explain that charge against him, and if found guilty thereof no greater punishment could be meted out to him than the rule provided.

The order of certiorari should, therefore, be sustained and the

determination of the commissioner, in so far as it dismissed the petitioner from the city service, annulled, with fifty dollars costs and disbursements to the petitioner, and the petitioner reinstated, but with a penalty of ten demerits against him for the offense of which he was found guilty.

CLARKE, P. J., MERRELL and BURR, JJ., concur; MARTIN, J., dissents.

MARTIN, J. (dissenting):

Petitioner was an assistant foreman, second grade, in the department of street cleaning of the city of New York. On October 4, 1921, charges were preferred against him as follows:

" You are charged with violation of Rule No. 25 of this Department, in that on September 29, 1921, he accepted a gratuity of $2.00 given by Dr. Young of Presbyterian Hospital through his porter, Peter Bevins, with the understanding that the same was to be given to the drivers by Assistant Foreman Prowler for the removal of garbage.

" In connection therewith you are hereby notified that a hearing will be given to you before the Commissioner, Borough of Manhattan, at Main Office, Municipal Building, 12 o'clock, Oct. 7, 1921."

The charge made against petitioner grew out of a change in the manner of removing garbage from the Presbyterian Hospital. That institution had theretofore disposed of its garbage to private contractors and farmers. When it discontinued such practice, a request was made to the department of street cleaning to remove the refuse. At the time this request was made a large quantity of garbage had accumulated and petitioner was ordered to go to the hospital to arrange for its proper disposition. Petitioner testified that he went to the hospital where he received two dollars while attending to the removal of the garbage. His testimony is in part as follows: " There was approximately I will say from twenty-six to thirty receptacles of garbage and two big barrels, and while I was standing figuring this out, someone approached me and says, ' The porter wants to see you.' I wasn't paying much attention; there are two entrances there, one at the side. I was going out and as I was going out, this man, porter, came running up and slips two dollars in my pocket, this way, and I ran out because the carts was coming, because they were expected to be there at that time. As I came in this way I was hailed by Mr. Gentner, and he said, did I receive the money. I took the money out of my pocket and gave it back to the porter."

Section Foreman Gentner testified that he called at the hospital while petitioner was there, and that he was informed by the porter

that he had given money to petitioner. Gentner then asked petitioner about the receipt of the money, and he testified that petitioner said: " There is no rule which will hold me for accepting money." The witness also testified that he directed the petitioner to return the money to the porter, and that he saw petitioner do so.

District Superintendent Patrick Flaherty testified that he went with petitioner to the hospital after the occurrence and asked the porter about the incident. He also testified that the porter, speaking of the money, stated that Prowler had said to him: " Give it to me and I will give it to the drivers." The witness also testified that Prowler sought to overcome the porter's statement by saying: " Did I ask you for any money? "

The commissioner found petitioner guilty and ordered his removal. The hearing on the charges complied with section 537 of the Greater New York charter (Laws of 1901, chap. 466), which provides: " No member of the clerical or uniformed force of the department of street cleaning shall be removed until he has been informed of the cause of the proposed removal and has been allowed an opportunity of making an explanation and in every case of removal the true grounds thereof shall be entered upon the records of the department."

There are numerous authorities to the effect that an opportunity to explain is the only hearing required under the existing statute. The hearing in this case, therefore, was sufficient. (*People ex rel. Keech* v. *Thompson*, 94 N. Y. 451; *People ex rel. Lawson* v. *Coler*, 40 App. Div. 65; *People ex rel. Holden* v. *Woodbury*, 88 id. 593.)

Counsel in the brief submitted for petitioner says that this whole matter was a frame-up. Such a statement is idle in the face of the fact that petitioner admitted he accepted a gratuity.

Petitioner contends that he did not violate any rule of the department. He admits, however, that there is a rule prohibiting the acceptance of gratuities, but says he did not accept the gratuity for himself; that he intended to give it to the drivers. He also contends that the only penalty provided for such a violation of the rule is the imposition of a mark of ten demerits, which may be considered on the hearing of subsequent charges or when the petitioner is being considered for promotion.

His contention is that when found guilty, if the offense is a first offense, the extent of the punishment which may be imposed by the commissioner is the imposition of a mark of ten demerits; that upon being found guilty of a second like offense, the only punishment that may be imposed is a mark of twenty demerits; that upon being found guilty of a third offense, the only punishment the commissioner may impose is the imposition of a mark of forty demerits,

First Department, February, 1925.        [Vol. 212

and if found guilty of a fourth offense the commissioner may finally dismiss the offender from the department.

Section 537 of the charter provides that the commissioner of street cleaning is authorized and empowered from time to time to make, adopt and enforce rules, orders and regulations conformable to the provisions of this act, for the government, administration, discipline and disposition of the said department and of the members thereof, and to prescribe and define the duties of each member. There is no grant of power contained therein permitting a commissioner to make a rule by which he is deprived of the authority to dismiss a dishonest employee. That section of the charter merely provides for the adoption of rules for the proper conduct of the department, similar to those established generally in every other department of the city government.

Admitting for the purpose of argument that there is such a rule of the department, it may not contravene the sections of the charter, nor bind a commissioner who finds one of the members of his department accepting gratuities. The commissioner has an absolute right, in the face of such a rule, and by virtue of the statute, upon proof of the acceptance of gratuities, to dismiss the offender from the service of the city. In my opinion there is no authority in the commissioner to make such a rule. The section of the charter giving him authority to make rules for his department does not permit the enactment of a rule that an employee must be found guilty of what is colloquially termed grafting on four different occasions before he may be dismissed from the service of the city.

The rule, even though made without authority, should be rescinded. If a system is in force in the street cleaning department that citizens must pay tribute in order to secure the removal of ashes, garbage or refuse, it should be speedily dealt with and those accepting gratuities should be dismissed from the service. Apparently, a hospital was not immune from petitioner's demands.

He now contends that accepting money for the purpose of handing it to others was not the acceptance of a gratuity; that he merely received the money for subsequent delivery to the drivers. When he was questioned about accepting the gratuity, he said: " There is no rule which will hold me for accepting money." The offense of which the petitioner was found guilty, no matter how it may be described by the charges, was specified in detail and was a violation of the rules, neglect of duty and breach of discipline.

Section 537 of the charter provides that the street cleaning commissioner " shall have power, in his discretion, on evidence satisfactory to him that a member of the uniformed force has been

guilty of any legal or criminal offense or neglect of duty, violation of rules, or neglect or disobedience of orders, or incapacity, or absence without leave, or conduct injurious to the public peace or welfare, or immoral conduct, or any breach of discipline, to punish the offending party by forfeiting or withholding pay for a specified time, suspension without pay during such suspension for a period not exceeding thirty days, or by dismissal from the force    *    *    *."

The petitioner was not only guilty of neglect of duty, but was guilty of conduct injurious to the public peace and welfare; immoral conduct, in the sense that dishonesty or the encouragement of dishonesty is immoral; and certainly a breach of discipline.

I believe the petitioner was properly dismissed and that the order should be dismissed and the determination of the commissioner confirmed, with fifty dollars costs and disbursements.

Order of certiorari sustained, and determination, in so far as it dismissed the petitioner from the city service, annulled, with fifty dollars costs and disbursements to the petitioner, and the petitioner reinstated in his said position, but with a penalty of ten demerits against him for the offense of which he was found guilty.